1  Manny Starr (319778)
2  manny@frontierlawcenter.com
   Joseph A. Gross (332258)
3  joseph@frontierlawcenter.com
   **Frontier Law Center**
4  23901 Calabasas Road, #2074
   Calabasas, CA 91302
5  Telephone: (818) 914-3433
6  Facsimile: (818) 914-3433

7  Attorneys for Plaintiff Mercedeh Kermani
   and others similarly situated
8

9              UNITED STATES DISTRICT COURT
10              CENTRAL DISTRICT OF CALIFORNIA

11

12  MERCEDEH KERMANI, an                  | Case No.
    individual; on behalf of herself and
13  others similarly situated,            | **CLASS ACTION**

14              Plaintiff,                | **COMPLAINT FOR:**

15         vs.                            | **1. BREACH OF CONTRACT; AND**
                                          | **2. VIOLATIONS OF CALIFORNIA**
16  APARTMENT INCOME REIT                 | **BUSINESS AND PROFESSIONS**
    CORP,; AIMCO MALIBU CANYON,           | **CODE SECTION 17200,** *et seq.*
17  LLC,; OP PROPERTY MGMT., LP,;
    AIMCO OP, L.P.; AIMCO OP GP,
18  LLC; and DOES 1 – 100, inclusive.

19              Defendants.

Plaintiff Mercedeh Kermani ("Plaintiff"), individually and on behalf of all other California citizens similarly situated (the "Class"), brings this action against Defendants APARTMENT INCOME REIT CORP. ("REIT"), AIMCO MALIBU CANYON, LLC., ("MALIBU"), OP PROPERTY MGMT., L.P., ("OP"), AIMCO OP LP ("AIMCO LP"), and AIMCO OP GP, LLC ("AIMCO LLC")(Defendants REIT, MALIBU, OP, AIMCO LP, and AIMCO LLC are collectively referred to as "Defendants"), upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record, and alleges as follows:

## INTRODUCTION

1.  Plaintiff brings this action to challenge Defendants' blanket policy of refusing to mitigate damages in any way whatsoever when a tenant breaks their lease with 90 days, or less, remaining on the lease.

2.  Defendants own, lease, and manage residential properties in California on behalf of various affiliated property holding companies.

3.  Pursuant to Defendants' form Lease Agreement, Defendants claim to be entitled to the full balance owed on the life of the lease, unless Plaintiff and the Class follow their "Early Termination Option."

4.  Pursuant to Defendants' form Lease Agreement, Plaintiff and the Class may not exercise the Early Termination Option "if there are less than 3 months remaining on the Lease Term, or during a Two-Month Renewal Term."

5.  Pursuant to Defendants' form Lease Agreement, Plaintiff and the Class are rent-responsible for the duration of the lease, provided Plaintiff and the Class failed to exercise the Early Termination Option, less reasonable efforts to mitigate damages by Defendants.

6.  When a tenant does not exercise the Early Termination Option, Defendants employ a blanket policy of failing to make any efforts to mitigate damages despite their obligation to do so under contract, or under statute.

7. Defendants routinely extorted Plaintiff and the Class into forking over 3-months-worth of rent by simply claiming that Plaintiff and the Class were rent responsible for the duration of the Lease, and making zero, or unreasonable, efforts to mitigate damages.

8. Because Defendants' policy and practice of extorting 3-months-worth of rent from Plaintiff and the Class violates *California Civil Code* §1951.2 and caused Plaintiff and the Class to lose money, it is an unlawful practice prohibited by California's Unfair Competition Law, *Business and Professions Code* §17200, *et seq*. (the "UCL"). Defendants' policy is also an unfair business practice in violation of the UCL.

9. As if extorting three-months-worth of rent from Plaintiff and the Class weren't bad enough, Defendants also employ a policy of fabricating expenses associated with Plaintiff and the Class' move-out for the sole purpose of increasing the amount of Plaintiff and the Class' security deposits.

10. In this action, Plaintiff and the Class seek (1) restitution of the 3-months-worth of rent Defendants extorted from them and the fabricated costs associated with their move-outs; (2) a declaratory judgment that Defendants' blanket policy of refusing to mitigate damages where Plaintiff or the Class broke their lease with 3 months or less left on the Lease Term is prohibited by California law; (3) a declaratory judgment that Defendants' policy of fabricating expenses associated with Plaintiff and the Class' move-outs is prohibited by California law; and (4) an injunction barring Defendants from continuing their unlawful, and unfair business practices.

## PARTIES

11. Plaintiff is, and at all times herein was, a California citizen residing in the State of California, County of Los Angeles. From approximately August 25, 2021, to June 18, 2022, Plaintiff was a tenant on a residential lease for an

apartment located at the Malibu Canyon (C) – 041790 apartments, 5736 N. Las Virgines Road, Calabasas, CA 91302.

12. Defendant Apartment Income REIT Corp. ("REIT") is a Maryland Corporation doing business in Los Angeles County, California.

13. Defendant AIMCO OP, L.P., ("AIMCO LP") is a Delaware Limited Partnership, doing business in Los Angeles County, California.

14. AIMCO OP GP, LLC., ("AIMCO LLC") is a Delaware Limited Liability Company, doing business in Los Angeles County, California.

15. Plaintiff is informed and believes, and on thereon alleges, that Defendant AIMCO Malibu Canyon, LLC., ("MALIBU") is a Delaware Limited Liability Company, doing business in Los Angeles County, California.

16. Defendant OP Property Mgmt., L.P., ("OP") is a Delaware Limited Partnership, doing business in Los Angeles County, California.

17. Plaintiff is informed and believes, and thereon allege, that at all times relevant herein, Defendants, and each of them, were owners, occupiers, lessors, developers, managers, contractors, and/or subcontractors working on numerous residential properties in California.

18. Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 100 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiff is informed and believes, and based on such information and belief alleges, that each of the DOE Defendants are contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiff will amend this Complaint to set forth the true names and capacities of each DOE Defendants when same are ascertained.

19. Defendants REIT, MALIBU, OP, AIMCO LP, AIMCO LLC, and all DOE Defendants are collectively referred to as "Defendants."

20. Plaintiff is informed and believes, and based on such information and belief, and based on such information and belief allege, that Defendants, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service, or employment in performing the acts and omitting to act as averred herein. Each of the Defendants named herein are believed to and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

## JURISDICTION AND VENUE

21. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state different from that of Defendants; and (ii) aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) Defendants are not a state, state officials, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

22. This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

23. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendants conduct business within the State of California, has failed to designate with the office of the California Secretary of State a principal place of business in

California, and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## FACTUAL ALLEGATIONS

24. Plaintiff is informed and believes, and based on such information and belief allege, that Defendants own, manage, and operate approximately 74 residential properties in California.

25. Plaintiff is informed and believes, and based on such information and belief allege, that Defendants utilize the same, or a substantially similar lease agreement, in all residential leases they have entered in California.

26. The Lease contains a clause stating, "Resident understands that Resident is liable under the Lease through the end of the Lease Term, even if Resident relinquishes possession of the Apartment Home before the end of the Lease Term."

27. However, the same clause goes on to state, "If Resident vacates the Apartment Home before the end of the Lease Term, Resident will be liable to Landlord for Rent Default Termination Damages (described in the Definition Annex of this Lease)."

28. The term "Rent Default Termination Damages" is defined by the Definition Annex to Apartment Lease (the "Annex") as, "equal to the total sum of amounts due under the Lease through the end of the Lease Term, including mitigation costs and Enforcement Costs, minus any amounts that could have reasonably been mitigated by Landlord."

29. The term "Enforcement Costs" is defined by the Annex as, "Landlord's costs of enforcing the terms of this Lease and of collection, including collection agency costs, litigation costs, and reasonable attorneys' fees and costs (including in-house counsel and all level of proceedings), whether or not a lawsuit is brought. The attorneys' fees portion of the Enforcement Costs will be subject to the Attorney Fee Cap."

30. The term "Attorney Fee Cap" is defined by the Annex as, "$600."

31. Notwithstanding the conflict between the language in this clause, that Plaintiff and the Class are liable for the full Lease Term if they leave prior to the conclusion of the Lease term, and the language incorporated into this clause stating that the amounts owed are reduced by Defendants' reasonable mitigation efforts, Defendants assert that Plaintiff and the Class were obligated to pay the full balance remaining on the Lease if they sought to break their lease early; Defendants' position is that they are not obligated to relet the property, or mitigate damages whatsoever.

32. Pursuant to the Lease, a party that wants to break their lease early has the following options: (1) pay the "Rent Default Termination Damages;" or "To avoid this uncertainty, and as an alternate to liability for Rent Default Termination Damages, Resident may choose to pay a flat fee in advance to terminate the lease early, rather than remaining liable for rent due through the end of the Lease Term;" (2) comply with the 6-step process set forth in the lease, which includes an "Early Termination Option Fee," and pay any "Rent Concessions" prior to the termination date.

33. The term "Rent Concession" is defined by the Annex as, "Any rent or similar concession, whether by free rent, partially abated rent, reimbursed expenses, waived fees or otherwise."

34. Plaintiff is informed and believes, and based on such information and belief allege, that the COVID-19 vaccine crippled the economy, and forced many individuals who were bound by Defendants' form Lease Agreement to seek "Rent Concessions" from Defendants.

35. The term "Early Termination Option Fee" is defined by the Annex as, "Two months' Rent at the rate current when the Early Termination Option is exercised.

36. The 6-step process referenced in Defendants' form Lease Agreement states, ""(i) At least 60 days before the date that Resident desires to end the Lease, Resident gives Landlord written notice of Resident's election to exercise the early termination option, signed by all Residents; (ii) Resident receives written confirmation from Landlord that Landlord has received this notice; (iii) Resident is not in default of this Lease both when Resident gives the notice and on the date of early termination; (iv) Resident pays the Landlord all Rent and other amounts due through the early termination date; (v) Resident pays the Early Termination Option Fee and any Rent Concession, before the early termination date; and (vi) Resident vacates the Apartment Home on the early termination date in the manner provided in this Lease."

37. The Lease contains a clause stating, "Resident may not exercise the Early Termination Option under this paragraph if there are less than 3 months remaining on the Lease Term, or during a Two-Month Renewal Term."

38. Thus, an individual who was subject to Defendants' form Lease Agreement who sought to break their lease with more than 3 months remaining on the Lease Term, could choose to pay what amounts to liquidated damages in the amount of 2 months' rent plus any Rent Concessions they received during the COVID-19 pandemic, or risk paying $600, or more, in Enforcement Costs plus the full term of the lease, less Defendants' reasonable mitigation efforts, which Defendants claim they were not actually obligated to perform.

39. Individuals who were subject to Defendants' form Lease Agreement who sought to break their lease with 3 months, or less, remaining on the Lease Term were simply required to pay $600, or more, in Enforcement Costs plus the full term of the lease, less Defendants' reasonable mitigation efforts, which Defendants claim they were not actually obligated to perform.

40. Plaintiff initially signed a Lease with Defendants on August 25, 2021, with a Lease End Date of August 29, 2022.

41. On or about June 8, 2022, Plaintiff informed Defendants that she would be moving out on June 18, 2022, and that the property would be ready to be relet to another tenant at that time; Plaintiff indicated she believed the property was not habitable (the "Move-Out E-mail").

42. In the Move-Out E-mail, Plaintiff stated she would waive any claims of retroactive rent abatement or other damages if Defendants agreed to terminate the Lease. Alternatively, if Defendants were unwilling to terminate the lease, Defendants were required to mitigate damages and find a new tenant in a timely manner.

43. In response to the Move-Out E-mail, Defendants stated that "early termination is no longer possible if there's only less than 90 days remaining in your lease. You may vacate the unit as early as you preferred (sic) but will still be rent responsible until 8/29/2022."

44. Each subsequent month, through the expiration of Plaintiff's Lease, Defendants sent Plaintiff bills which charged Plaintiff: a (1) "Vacant Service Fee" in the amount of $50.00; (2) "Vacant Gas Fee;" and (3) that month's rent.

45. Defendants charged Plaintiff full rent, as well as a Vacant Service Fee for the remainder of her Lease.

46. The terms of Defendants' form Lease Agreement, paired with their response to the Move-Out E-mail and billing practices6, makes clear that Defendants have, and enforce, a blanket policy of refusing to mitigate damages where a tenant seeks to break their lease with 3, or less, months remaining on their Lease Term.

47. Notwithstanding the terms of Defendants' form lease, and its requirement that Defendants' attempt to mitigate damages, Defendants imposed a blanket policy of refusing to mitigate damages when a lease was broken with 3 months, or less, remaining on the Lease, and demanded that Plaintiff and the Class pay the full amount owed on the Lease of face legal consequences.

48. *Civil Code* §1951.2 a landlord may only recover the worth of the full term of lease, less any amount that could be reasonably mitigated by them, if the lease provides such.

49. The express terms of Defendants' form Lease Agreement states their duty to mitigate damages in Rent Default Termination Damages section of the Annex to the Lease.

50. Therefore, Defendants blanket policy of refusing to mitigate damages when a tenant breaks their lease with 3, or less, months remaining on the Lease Term, constitutes a breach of contract, as well as an unfair and unlawful business practice.

51. Additionally, Defendants routinely charge Plaintiff and the Class for fabricated expenses in order to retain unjustified funds from Plaintiff and the Class' security deposit.

52. On information and belief, Defendants charged Plaintiff $160.00 for painting over damages on September 9, 2022.

53. This charge is flatly contradicted by Defendants own "Pre-move out Apartment Inspection Report," (the "Report") on June 16, 2022, which stated "Painting $0,"

54. Therefore, Defendants have engaged in unfair business practices in that they are essentially stealing money from Plaintiff and the Class' security deposit by fabricating expenses to justify the theft.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

55. Plaintiff and the Class re-alleges and incorporates by reference each allegation set forth above.

56. Plaintiff and the Class bring this action on their own behalf and on behalf of all other similarly situated as a class action pursuant to *California Code of Civil Procedure* §382.

57. Plaintiff seeks to represent the following putative class:

> All tenants of Defendants' properties in the State of California during the Class Period who attempted to break their lease with 3, or less, months remaining on their lease, and were forced to pay the unmitigated remainder of the balance due on said lease.

The "Class Period" begins at four years prior to the date of filing this action and continues through the date of judgement. Specifically excluded from the Class are: (a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

58. Throughout the Class Period, Defendants have charged and collected from Class Members unmitigated rents owed through the entirety of the lease, in breach of the Lease Agreement and *Civil Code* §1951.2. This unfair and unlawful outcome was the direct result of Defendants' blanket policy of refusing to mitigate damages when a tenant sough to break their lease with 3, or less, months remaining on their lease. As such, Class Members, each and every one of them, have been subjected to Defendants' illegal and unfair practices, and are entitled to relief under the UCL.

59. Throughout the Class Period, Defendants have charged and collected from Class Members fabricated, and unjustified, deductions from Class Members security deposits. This unfair and unlawful outcome was the direct result of Defendants' dishonesty. As such, Class Members, each and every one of them, have been subjected to Defendants' illegal and unfair practices, and are entitled to relief under the UCL.

60. Plaintiff reserves the right to amend or modify the class definition(s) with greater specificity, by further subdivisions into subclasses, and/or by limitation to particular issues.

61. There are common questions of law and fact as to members of the Class and Subclasses that predominate over questions affecting only individual members, including, but not limited to:

    (a) Whether Defendant unreasonably refused to mitigate when Plaintiff and the Class members broke their lease early;

    (b) Whether Defendants' conduct is an unlawful and unfair business practice in violation of California Business & Professions Code section 17200, *et seq.*;

    (c) Whether Plaintiff and Class members are entitled to declaratory and injunctive relief regarding Defendants' failure to mitigate damages subsequent to Plaintiff and the Class members breaking their lease early;

    (d) The appropriate remedy for Defendants' violations of California law.

62. There is a well-defined community of interest in the litigation and the Class members are readily ascertainable:

    (a) <u>Numerosity</u>: The Class members are so numerous that joinder of all Class members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

    (b) <u>Typicality</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom she has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class members as demonstrated herein.

    (c) <u>Adequacy</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom she has a well-defined community of interest and typicality of claims, as

demonstrated herein. Plaintiff acknowledges that she has an obligation to make known to the Court any relationship, conflicts or differences with any Class member. Plaintiff's attorneys, the proposed Class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class member.

(d) <u>Superiority</u>: The nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
**By Plaintiff, and the Class, Against All Defendants**

63. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

64. Defendants entered into Lease Agreements with Plaintiff and the Class.

65. Pursuant to the Lease Agreement, Defendants were contractually obligated to mitigate damages caused by Plaintiff and the Class' early termination, regardless of when that Lease Termination occurred.

66. Pursuant to *California Civil Code* section 1951.2, Defendants are statutorily obligated to mitigate damages caused by Plaintiff and the Class' early termination of the Lease, regardless of when that Lease Termination occurred.

67. On information and belief, Defendants neglected to make any efforts to mitigate the damages caused by Plaintiff and the Class' early termination of the Lease, much less reasonable efforts as required by law.

68. On information and belief, Defendants neglected to make any efforts, reasonable or otherwise, to mitigate the damages caused by Plaintiff and the Class' early termination of the Lease, due to a blanket non-mitigation policy employed by Defendants.

69. Therefore, Defendants have breached the Lease as it related to Plaintiff and the Class and are liable for the damages associated with that breach.

## SECOND CAUSE OF ACTION
## Violation of the Unfair Competition Law
## (Cal. Bus. & Prof. Code §§ 17200, *et seq*.)
## By Plaintiff, and the Class, Against All Defendants

70. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

71. California Business and Professions Code section 17200, *et seq*. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Defendants have committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

72. The UCL imposes strict liability. Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

73. Defendants are a "person" as defined by Business & Professions Code § 17201.

74. As a direct and proximate result of Defendants' acts and practices in violation of the UCL, Plaintiff and the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

///

### Unlawful Prong

75. A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

76. The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

77. Defendants' conduct is unlawful because it violates *California Civil Code* section 1951.2, which creates a default rule that the duty to mitigate damages when a lessee breaches a lease, or if the lessee abandons the property, falls on the lessor.

78. Defendants' conduct is unlawful because it is fraudulent, as it relates to fabricating expenses in an effort to retain unjustified portions of Plaintiff and the Class' security deposits.

### Unfair Prong

79. An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory, or regulatory provisions. Defendants' conduct violates all of these definitions.

80. As alleged above, Defendants engage and have engaged in a systematic business practice of refusing to mitigate damages when a tenant attempts to break their lease early, as is common in the landlord-tenant relationship. This is so notwithstanding the fact that Defendants *acknowledged* their obligation in the Lease.

///

///

81. Defendants do this in an effort to maximize their profit; by forcing a tenant to pay the full amount owed on the lease, and paying $0 to mitigate damages, Defendants have created a situation where *everything* is profit.

82. Defendants engage in a systematic business practice of fabricating expenses to justify retaining unjustified portions of Plaintiff and the Class' security deposits.

83. Defendants do this in an effort to increase profits; by charging Plaintiff and the Class for things that were never done and therefore never paid for, Defendants have increased their profits.

84. All of the acts and practices of Defendants as described in this complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Plaintiff has suffered injury in fact and a loss of money or property as a result of Defendants' unfair business acts and practices as set forth herein in detail. It is Plaintiff's information and belief that Class members have also suffered injury as a result of Defendants' wrongful conduct.

85. As a direct and proximate result of Defendants' acts and practices in violation of the UCL, Plaintiff and members of the Class have paid unjustified sums in unmitigated rental costs, as well as unjustified sums of money as a result of fraudulent charges related to the repair of their units. Violating the law and defrauding tenants is clearly an unfair practice.

86. Defendants' conduct does not benefit consumers or competition. Plaintiff and Class members could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. Defendants' conduct only benefits Defendants, by increasing their profits.

87. The gravity of the consequences of Defendants' conduct as described above outweighs the justification, motive, or reason and therefore, is immoral,

unethical, and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, or is substantially injurious to the public, for the reasons set forth above.

88. Defendants' conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding a landlord's duty to mitigate damages caused by the early termination of a lease.

89. Defendants' conduct is substantially injurious to the public, for the reasons set forth above.

90. To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to Defendants' justification and motives for its conduct, and as to the impact of Defendants' conduct on Plaintiff and Class members.

91. Defendants' acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and all others similarly situated, prays for relief and judgment against Defendants as follows:

1. For an order certifying this case as a class action, appointing Plaintiff as the representative of the Class, and appointing counsel for Plaintiff as Class Counsel;

2. That the Court declare, adjudge, and decree that Defendants are financially responsible for notifying all Class members about the wrongful conduct set forth herein; that Defendants' conduct as alleged herein violates *Civil Code* section 1951.2 because Defendants' categorically refuse to mitigate damages when Plaintiff and the Class breaks their Lease Agreement with 30 days or left

remaining on that Lease and that Defendants conduct as alleged herein violates *Civil Code* section 1572 because Defendants knowingly made false statements with the intent to deceive Plaintiff and the Class and extort unjustified sums of money from their security deposits.

3. That the Court declare, adjudge, and decree that Defendants are responsible for notifying all Class members about the wrongful conduct set forth herein;

4. That the Court declare, adjudge, and decree that Defendants failure to mitigate damages caused by the Early Terminate of the Lease, and Defendants fabrication of costs in an effort to take unjustified sums of money from Plaintiff and the Class' security deposits, constitutes an unfair and unlawful business practice in violation of the UCL;

5. For declaratory relief pursuant to 28 U.S.C. section 2201 that Defendants are in violation of, and must comply with, *Civil Code* section 1951.2, *inter alia*, attempt to mitigate their damages when a tenant attempts the terminate their lease early.

6. For an order declaring and enjoining Defendants from further unfair and unlawful practices.

7. For an award to Plaintiff and the Class all monies they are owed;

8. For the appointment of a receiver, as necessary, to receive, manage and distribute any and all funds from Defendants; and determined to have been wrongfully harmed by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

9. For an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

10. For an award of attorneys' fees and costs, as otherwise allowed by law;

11. For an award of pre-judgment and post-judgment interest;

12. For leave to amend the Complaint to conform to the evidence produced at trial; and,

13. For all other relief as may be appropriate under the circumstances.

Dated: September 15, 2022             Respectfully submitted,

**FRONTIER LAW CENTER**

By: /s/ Joseph Gross
Joseph Gross
*Attorney for Plaintiff*
Mercedeh Kermani

DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Fed. R. Civ. Pro 38.

Date: September 15, 2022             FRONTIER LAW CENTER

/s/ Joseph Gross
Joseph Gross
Attorney for Plaintiff
Mercedeh Kermani